IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEAN E. HENRY,

    Plaintiff,

v.

BRIAN J. TYLER, et al.,

    Defendants.

Case No. 19-cv-02869-CRB

**ORDER GRANTING MOTION TO DISMISS**

Widespread anticompetitive conduct in the generic pharmaceuticals industry has led to a Department of Justice investigation, a complaint brought by forty-nine Attorneys General (the "AG complaint"), and a plethora of antitrust and Securities Act lawsuits against generic drug manufacturers. Although McKesson Corp. ("McKesson") is, for the most part, a generic drug wholesaler, it has not been entirely spared. It is a defendant in multiple civil actions arising from the scandal, including a securities fraud action pending before this court.

Jean Henry's derivative shareholder complaint ("the FAC") builds off the allegations of earlier actions to accuse former and current McKesson executives and directors (collectively, "Defendants") of breaching their fiduciary duties. Defendants have moved to dismiss Henry's complaint for failure to state a claim or demonstrate demand futility. MTD (dkt. 44). Because Henry fails to sufficiently allege either demand futility or that McKesson participated in a price-fixing conspiracy, the motion to dismiss is granted.

**I.     BACKGROUND**

McKesson is a pharmaceutical wholesaler. FAC ¶ 21 (dkt. 41). The majority of its

business involves buying drugs from manufacturers and reselling them to pharmacies and hospitals. Id. McKesson also owns a subsidiary, NorthStar Rx ("NorthStar"), that manufactures generic drugs. Id. ¶ 22.

In the last several years, evidence has come to light of widespread anti-competitive conduct in the generic drug market. Id. ¶¶ 2. Investigations by Congress, the Department of Justice, and multiple Attorneys General have led to a number of guilty pleas and a complaint alleging a wide-ranging price-fixing conspiracy. Id. ¶ 1–3, 62–73. The AG complaint alleges that generic drug manufacturers agreed to divide market share rather than compete on price. Id. ¶¶ 2–4. It does not name McKesson as a defendant. Id. ¶ 9. McKesson is also a defendant in various civil actions arising from the price-fixing conspiracy, including a securities fraud class action pending before this Court. Id. ¶ 1.

Henry is a shareholder in McKesson. Id. ¶ 183. She is bringing this action derivatively on behalf of McKesson, alleging that Defendants breached their fiduciary duties of loyalty and care to the company. Id. ¶¶ 181, 194. The FAC alleges that Defendants knowingly, recklessly, or negligently allowed McKesson to "become implicated in an illegal price-fixing and market allocation scheme." Id. ¶ 196. McKesson ostensibly participated in the antitrust conspiracy both in its role as a wholesaler and through NorthStar. Id. ¶¶ 74–99. The FAC seizes on allegations in the AG complaint that generic drug manufacturers Heritage Pharmaceuticals, Inc. ("Heritage") and Mayne Pharma Inc. ("Mayne") conspired to divide the market for Doxy DR. Id. ¶¶ 81–82. Because Heritage and Mayne supplied Doxy DR to McKesson, and a Heritage employee stated that McKesson and Heritage were "strategically aligned," the FAC suggests McKesson must have been in on the agreement. Id. It also reiterates allegations from the securities class action that NorthStar colluded to fix the price of Leflunomide. Id. ¶¶ 93–94. The FAC also alleges circumstantial evidence of McKesson's participation in a price-fixing conspiracy, including the movement of "top officers" between McKesson and generic drug manufacturers named as defendants in the AG complaint. Id. ¶¶ 85–86, 97–99.

Henry's second theory of liability is that Defendants exposed McKesson to "substantial liability" in the securities fraud class action by making false and misleading statements about the company's income and the underlying causes of generic drug price inflation. Id. ¶¶ 122–68. Many of the alleged falsehoods are explanations McKesson's former Chief Executive Officer John Hammergren and former Chief Financial Officer James Beer offered for rising generic drug prices. See, e.g., id. ¶ 123. Henry also alleges that financial statements filed with the Securities and Exchange Commission were misleading because "McKesson's financial results were materially impacted by unsustainable generic drug price hikes, including price increases driven by collusive activities." Id. ¶ 156.

According to the FAC, McKesson's Audit Committee was responsible for reviewing, or at least discussing, "annual audited financial statements and the disclosures therein," "earnings press releases," and "financial information and the type and presentation of information to be presented in earnings guidance." Id. ¶ 175. Defendants Wayne Budd, Alton Irby III, M. Christine Jacobs, Donald Knauss, and Marie Knowles were members of the Audit Committee (collectively, "the Audit Committee defendants"). Id. ¶¶ 28–30, 32, 34.

McKesson's current Board of Directors ("the Board") is comprised of defendants N. Anthony Coles, Knauss, Knowles, Jacobs, Edward Mueller, Brian Tyler, and Susan Salka, plus non-defendants Dominic Caruso and Bradley Lerman. Id. ¶ 186. Henry alleges she "did not make a demand on the board of directors to take remedial action on behalf of McKesson," as usually required to bring a derivative action, "because such a demand would have been a futile, wasteful and useless act." Id. ¶ 185; see also Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014).

After Defendants moved to dismiss for failure to state a claim, Henry filed an amended complaint. see generally First MTD (dkt. 38); FAC. Defendants then filed the instant motion to dismiss, arguing that Henry has failed to adequately plead either a plausible claim for breach of fiduciary duty or demand futility. See generally MTD.

3

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court nevertheless has discretion to "deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

"The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." Rosenbloom v. Pyott, 765 F.3d 1137, 1147 (9th Cir. 2014) (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991)). "A shareholder seeking to vindicate the interests of a

4

corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." Id. at 1148 (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 989 (9th Cir. 1999)). "The purpose of this demand requirement in a derivative suit is to implement 'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders.'" Id. (quoting In re Pfizer Inc. S'holder Derivative Litig., 722 F. Supp. 2d 453, 458 (S.D.N.Y. 2010)).

If a derivative action plaintiff does not make a demand, the complaint must "state with particularity the reasons" for her failure to do so. Fed. R. Civ. P. 23.1(b)(3)(B). However, "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." Rosenbloom, 765 F.3d at 1148 (citation omitted). McKesson is a Delaware corporation, so Delaware law applies. FAC ¶ 20; see also id.

Delaware law requires a shareholder bringing a derivative suit to "demonstrate[ ], with particularity, the reasons why pre-suit demand would be futile." Id. Futility is determined on a director-by-director basis. "[A] derivative complaint must plead facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." Desimone v. Barrows, 924 A.2d 908, 943 (Del. Ch. 2007). The relevant board is the one that was sitting when the complaint was filed. Rosenbloom, 765 F.3d at 1148. "Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." Id. (quoting Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000)).

"When a shareholder challenges a decision of a board of directors, Delaware law provides a two-part, disjunctive test for demand futility." Id. at 1149. A shareholder can demonstrate futility by creating a reasonable doubt either that "the directors are disinterested and independent" or "that the challenged transaction was otherwise the

5

product of a valid exercise of business judgment." Id. (quoting Brehm, 746 A.2d at 256). On the other hand, when the shareholder alleges "that demand is excused on the ground that a board remained consciously inactive when it knew (or should have know) about illegal conduct," the complaint must "allege 'particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" Id. at 1150 (quoting Wood v. Baum, 953 A.2d 136, 140 (Del. 2008)). "Under either approach, demand is excused if . . . particularized allegations create a reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." Id.

## III. DISCUSSION

The FAC alleges two theories of liability. First, that "Defendants either knew, were reckless, or were grossly negligent in not knowing that McKesson was implicated in an illegal price-fixing and market allocation scheme." FAC ¶ 196. Second, that Defendants exposed McKesson "to substantial liability" by making false and misleading statements to investors and in SEC filings. Id. ¶ 122.

### A. Antitrust Violations

Any theory of liability premised on McKesson's participation in a price-fixing conspiracy fails because the FAC fails to plausibly allege the underlying antitrust violations. Henry's claims are chiefly premised on allegations recycled from previous complaints. See FAC ¶ 1. This Court has previously considered most of them and determined that they are insufficient to plausibly allege McKesson's participation in any illegal anticompetitive conduct. See Order Denying Motion to Dismiss at 9–13, Evanston Police Pension Fund v. McKesson Corp., No. 3:18-cv-06525-CRB (N.D. Cal. Oct. 30, 2019), ECF No. 67.

Although Henry pleads a few facts beyond those alleged in the Evanston complaint, they are insufficient to salvage this theory of liability. Henry alleges that "many of McKesson's top officers have moved between top positions at McKesson to top positions

at drug manufacturing companies alleged in the AG Complaint to be central players in the price-fixing conspiracy." FAC ¶ 85. Ostensibly, "[t]hese personnel exchanges facilitated the conspiracy by providing McKesson and the manufacturing [sic] the means to cooperate with one another through the personal relationships of former and current employees." Id. But this movement has an obvious innocuous explanation: top executives looking for a new job are likely to find one in the field they have experience in. A more plausible interpretation of these allegations is that sometimes executives at McKesson and its suppliers have sought new employment and found it at other generic drug companies, without going on to facilitate any illegal conspiracy. See In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1194 (9th Cir. 2015) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation." (internal quotation marks and citations omitted)).

Henry's briefing also refers to an alleged conspiracy to raise the price of Levothyroxine. Opp'n at 14–15. But the FAC makes no reference to Levothyroxine, see generally FAC, and, even if it did, the allegations Henry describes do not plausibly allege McKesson's participation in an antitrust conspiracy. Like the FAC's allegations, they suggest only that generic drug manufacturers who supplied McKesson conspired to fix prices, not that McKesson participated in those agreements.[1] See Opp'n at 14–15.

Because the FAC's failure to adequately allege that McKesson was involved in an illegal conspiracy is fatal to this theory of liability, the Court need not address the parties' other arguments on this issue.

---

[1] Henry also alleges some new facts to support her allegation that Defendants must have been aware of the purported underlying misconduct. For example, the FAC alleges that various defendants made suspicious stock sales "when the share price was artificially inflated due to the underlying misconduct." FAC ¶¶ 116–20. But whether the FAC adequately alleges that Defendants knew about the underlying antitrust violations is a moot point, because it fails to sufficiently plead that those violations even occurred. Any additional evidence plead to support this point is irrelevant.

### B. False Statements

This Court has previously denied a motion to dismiss a securities fraud action based on the same alleged false statements underlying Henry's second theory of liability. See generally Order Denying Motion to Dismiss, Evanston, No. 3:18-cv-06525-CRB. Nonetheless, this theory of liability fails because the FAC does not adequately plead demand futility.

As an initial matter, the parties dispute the correct test for demand futility in this case. Defendants assert that Henry alleges a failure of oversight, whereas Henry insists she is challenging a decision of the Board. Compare MTD at 22–23, with Opp'n at 7–8. This dispute is entirely beside the point. Henry alleges only one theory of futility: that the Board is not independent and disinterested because it "is far too directly and specifically involved in the misconduct alleged . . . to be able to reasonably or in good faith evaluate a demand to investigate their own misconduct." FAC ¶ 192. Because Henry relies on the Board's potential liability to demonstrate demand utility, she must plead "particularized allegations [to] create a reasonable doubt [that] a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty," regardless of which test applies. See Rosenbloom, 765 F.3d at 1150.

Henry has not met this standard, because the FAC "fails to provide specific facts showing that [a majority of] the Board approved the . . . allegedly fraudulent statements." Silicon Graphics, 183 F.3d at 990, overruled on other grounds by South Ferry LP v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008). Without "particularized facts demonstrating how each [Board member] was involved in, prepared, or even knew about the alleged misstatements and omissions," In re Facebook, Inc. S'holder Derivative Privacy Litig., 367 F. Supp. 3d 1108, 1127 (N.D. Cal. 2019), the FAC cannot create "a reasonable doubt that . . . the directors are disinterested and independent" as to this claim, Silicon Graphics, 183 F.3d at 990.

It is true that the FAC alleges that the Audit Committee Defendants were responsible for reviewing, or at least discussing, "annual audited financial statements and

the disclosures therein," "earnings press releases," and "financial information and the type and presentation of information to be presented in earnings guidance." FAC ¶ 175. But even assuming these allegations are a sufficiently specific showing that the Audit Committee Defendants "approved the . . . allegedly fraudulent statements," Silicon Graphics, 183 F.3d at 990, that would not demonstrate demand futility because the Audit Committee Defendants did not comprise a majority of the Board when the Complaint was filed,[2] see Rosenbloom, 765 F.3d at 1150; FAC ¶¶ 37, 186.

Henry argues that at least some of the "misrepresentations were made by Defendants themselves." Opp'n at 19 (original emphasis omitted). But this refers to Hammergren and Beer, who are not (current) Board members, so it is irrelevant to demand futility.

Finally, Henry argues that "any suit brought against the former directors would necessarily implicate the current directors." Opp'n at 21 n.9. This ignores Delaware law requiring that "a derivative complaint must plead facts specific to each director." Desimone, 924 A.2d at 943.

Henry's failure to plead demand futility is fatal, so her claims based on the alleged false statements are not viable. It is therefore not necessary to reach the parties' other arguments on this issue. If Henry believes the deficiencies identified in this order can be remedied by amendment, she may file an amended complaint within thirty days of the filing of this order.[3]

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted.

**IT IS SO ORDERED.**

Dated: January 21, 2020

CHARLES R. BREYER
United States District Judge

---

[2] This is true regardless of whether the relevant board is the one sitting when the original complaint was filed, or when the FAC was filed. See MTD at 3 n.2.
[3] Defendants request for judicial notice of eleven documents is denied as moot. See RJN at 1–2 (dkt. 45).